UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW YORK, COMMONWEALTH OF MASSACHUSETTS, DISTRICT OF COLUMBIA, STATE OF CALIFORNIA, STATE OF DELAWARE, COMMONWEALTH OF KENTUCKY, STATE OF MARYLAND, STATE OF NEW JERSEY, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, COMMONWEALTH OF VIRGINIA, and STATE OF WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR, R. ALEXANDER ACOSTA, in his official capacity as Secretary of the U.S. Department of Labor, and UNITED STATES OF AMERICA,<br><br>Defendants. | Civ. Action No. 18-1747-JDB |

**DECLARATION OF MASSEY S. J. WHORLEY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Massey S. J. Whorley, offer this Declaration in support of the Plaintiffs' motion for summary judgment. In doing so, I declare that the following facts are true to the best of my knowledge, information, and belief:

1. I am a Senior Advisor with the Virginia Department of Social Services. Before assuming my current position, I served as the Senior Policy Advisor to Secretary of Health and Human Resources, Dr. Daniel Carey, and to former Governor Terence R. McAuliffe. Prior to that, I was a Senior Policy Analyst at the Commonwealth Institute for Fiscal Analysis, a

nonpartisan organization that provides analyses of fiscal and economic policies and their implications for Virginians, especially low- and middle-income residents, where I managed the Health Care and Tax portfolios.

2. The Affordable Care Act (ACA) has been successful in improving quality and access to health care in Virginia. Since the ACA was enacted, the percent and number of individuals without insurance in Virginia has decreased. In 2009, prior to the implementation of the ACA, Virginia's uninsured rate for non-elderly adults (age 19-64) was 16.4%, representing 779,000 non-elderly adults in Virginia who lacked health insurance. By 2016, after the ACA was in effect, Virginia's uninsured rate for non-elderly adults dropped to 12.4%, representing 621,000 non-elderly adults in Virginia who lacked health insurance. A significant part of the ACA's success in reducing Virginia's uninsured rate was the federal health subsidies that enabled individuals with moderate incomes to purchase health insurance in the Exchanges. In 2017, 410,726 Virginians purchased health insurance on the Federally Facilitated Marketplace. In 2018, Virginia expanded Medicaid, which will lower Marketplace premiums while further expanding access to health insurance that covers all of the ACA's essential health benefits.

3. The Department of Labor's Final Rule re-interpreting ERISA's definition of employer (Final Rule) will have a substantial negative impact on Virginia's market for insurance. In particular, we anticipate a substantial decrease in enrollment and a substantial increase in premiums for individuals acquiring ACA-compliant health insurance through the Marketplace. The Final Rule will generally result in small groups and "working owners" who are healthier and have more attractive risk profiles leaving the Marketplace. One study estimated that, conservatively, more than two million people will leave the individual and small group markets for Association Health Plans, and that the average individual premium on the Marketplace would

be almost $15,000 by 2022, while the average Association Health Plan premium would be $6,200. The inevitable result of higher premiums is that some people will be unable to afford insurance. The study projected that the proposed rule would lead to 130,000 – 140,000 additional individuals in the United States becoming uninsured.

    4.    The Final Rule also will increase the financial and medical risk to our residents who enroll in Association Health Plans due to the limited plans that they may provide. The small groups and individuals who leave the insurance exchanges in favor of an Association Health Plan will have inferior coverage to that which they would have had if they remained in the Marketplace. Association Health Plans likely will not offer (because they are not required to offer) the comprehensive and essential benefits that are required of small groups and individual policies under the ACA, including coverage for pregnancy, substance abuse treatment, mental health treatment, and prescription drugs. Consequently, members of small groups and individuals who opt for an Association Health Plan will be at risk for unanticipated health care costs in the event they or their dependents become pregnant or suffer a sickness or injury that is not covered.

    5.    The Final Rule will result in financial harm to Virginia because the Commonwealth will be required to expend funds through its public hospitals and other state programs to provide care for these individuals in situations that would have been covered if they had obtained insurance through the Marketplace. For example, if members of an Association Health Plan are forced to obtain care at a public hospital for an essential health benefit that is not covered by their less comprehensive plan, then Virginia would incur a portion of the costs of providing that care if the individual cannot pay out of pocket. Moreover, there is a long history of Association Health Plans being underfunded, and the Commonwealth will be responsible for a

portion of the cost of providing care to these individuals when their claims are denied or cannot be paid because the plan is insolvent.

6. These well-known concerns about the effect Association Health Plans will have on the Marketplace and the people who count on it is why the Governor of Virginia vetoed state legislation that would have authorized Association Health Plans as a matter of state law. The Final Rule, like Virginia Senate Bills 934 and 935, undermines efforts to make sure all Virginians have access to quality, affordable health care. The Final Rule will increase the costs to the Commonwealth as people with minimal current health care needs purchase Association Health Plans that provide limited coverage, and people with more significant health care needs are forced to purchase ACA-compliant plans on the increasingly expensive Marketplace.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 8, 2018.

_____
MASSEY S. J. WHORLEY