## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

STATE OF NEW YORK, ET AL,
    *Plaintiffs*,

*v.*

UNITED STATES DEPARTMENT
OF LABOR, ET AL,
    *Defendants*.

</td><td>

CIVIL ACTION NO. 18-cv-1747 (JDB)

</td></tr>
</table>

---

## BRIEF FOR THE STATES OF TEXAS, NEBRASKA, GEORGIA, AND LOUISIANA AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Texas Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1826
Fax: (512) 474-2697

KYLE D. HAWKINS
Solicitor General
Kyle.Hawkins@oag.texas.gov

JOHN C. SULLIVAN
Assistant Solicitor General
John.Sullivan@oag.texas.gov

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Page

Index of Authorities ................................................................................ii

Interest of Amici Curiae ..........................................................................vi

Introduction and Summary of the Argument ........................................1

Argument....................................................................................................3

    I.    Agencies Need Not Jump Through Extra Procedural Hoops In Order To Alter Policy Determinations........................................3

    II.   The DOL's Decision Satisfies APA Review...............................6

Conclusion................................................................................................10

Certificate of Service............................................................................... 11

Certificate of Compliance ...................................................................... 11

# Index of Authorities

Page(s)

**Cases**

*BCCA Appeal Group v. U.S. EPA*,
    476 F. App'x 579 (5th Cir. 2012) (per curiam) ....................................................8

*California v. EPA*,
    No. 18-1114 (D.C. Cir. filed May 1, 2018)............................................................8

*California v. Hargan*,
    No. 4:17-cv-05783 (N.D. Cal. filed Oct. 6, 2017) ...............................................9

*California v. Ross*,
    No. 3:18-cv-01865 (N.D. Cal. filed Mar. 26, 2018) ...........................................9

*California v. Trump*,
    No. 3:17-cv-05895 (N.D. Cal. filed Oct 13, 2017)...............................................9

*California v. Zinke*,
    No. 4:17-cv-00042 (D. Mont. filed May 9, 2017)................................................8

*Coalition for Responsible Regulation, Inc. v. EPA*,
    684 F.3d 102 (D.C. Cir. 2012) (per curiam) .......................................................7

*Ctr. for Biological Diversity v. EPA*,
    No. 18-1139 (D.C. Cir. May 15, 2018) ................................................................8

*Doe v. Trump*,
    No. 1:17-cv-01597 (D.D.C. filed Aug. 9, 2017)..................................................9

*FERC v. Elec. Power Supply Ass'n*,
    136 S. Ct. 760 (2016) .......................................................................................5, 7

*EPA v. EME Homer City Generation, L.P.*,
    134 S. Ct. 1584 (2014) ....................................................................................1, 7

*Envtl. Integrity Project v. U.S. EPA*,
    610 F. App'x 409 (5th Cir. 2015) (per curiam) ..................................................8

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ........................................................................ 2, 3, 4, 5, 6, 7

*Hawaii v. Trump*,
  No. 1:17-cv-00050 (D. Haw. filed Feb. 3, 2017) ................................................... 9

*Inv. Co. Inst. v. U.S. Commodity Futures Trading Comm'n*,
  891 F. Supp. 2d 162 (D.D.C. 2012), as amended (Jan. 2, 2013),
  *aff'd sub nom*, *Inv. Co. Inst. v. Commodity Futures Trading Comm'n*,
  720 F.3d 370 (D.C. Cir. 2013) ...................................................................... 4

*IRAP v. Trump*,
  No. 8:17-cv-00361 (D. Md. filed Feb. 7, 2017) .................................................... 9

*Mead v. Holder*,
  766 F.Supp.2d 16 (D.D.C. 2011) ..................................................................... vi

*NAACP v. Trump*,
  No. 1:17-cv-1907-CRC (D.D.C. filed Sept. 18, 2017) ........................................... 8

*Nat. Resources Defense Council v. EPA*,
  571 F.3d 1245 (D.C. Cir. 2009) (per curiam) ..................................................... 8

*Nat'l Ass'n of Home Builders v. EPA*,
  682 F.3d 1032 (D.C. Cir. 2012) ................................................................... 2, 3

*Nat'l Coal. for Advanced Transp. v. EPA*,
  No. 18-1118 (D.C. Cir. May 3, 2018) .............................................................. 8

*New York v. Pruitt*,
  No. 1:18-cv-1030 (S.D. N.Y. filed Feb. 6, 2018) ................................................. 8

*Perez v. Mortgage Bankers Ass'n*,
  135 S. Ct. 1199 (2015) .......................................................................... 1, 2, 3, 4

*New York v. Trump*,
  No. 1:17-cv-5228-NGG-JO (E.D.N.Y. filed Sept. 6, 2017) .................................... 8

*Pennsylvania v. Trump*,
  No. 2:17-cv-04540 (E.D. Pa. filed Oct. 11, 2017) ............................................... 9

*Real Alternatives, Inc. v. HHS*,
   867 F.3d 338 (3d Cir. 2017) ................................................................8

*Regents of Univ. of Calif. v. DHS*,
   279 F. Supp. 3d 1011 (N.D. Cal. 2018) ..............................................8

*Sherley v. Sebelius*,
   689 F.3d 776 (D.C. Cir. 2012) ....................................................... 1, 7

*Sierra Club v. Zinke*,
   No. 4:18-cv-00524 (N.D. Cal. filed Jan. 24, 2018) .............................8

*Trs. of Princeton Univ. v. United States*,
   No. 1:17-cv-2325-CRC (D.D.C. filed Nov. 3, 2017) ..........................8

*U.S. Telecom Ass'n v. FCC*,
   855 F.3d 381 (D.C. Cir. 2017) (per curiam) ......................................7

*Vermont Yankee Nuclear Power Corp. v. Nat. Resources Def. Council, Inc.*,
   435 U.S. 519 (1978) ...........................................................................2

*Vidal v. Nielsen*,
   No. 1:16-cv-4756-NGG-JO (E.D.N.Y. filed Aug. 25, 2016) ...............8

**Regulations, Rules, and Other Authorities**

Definition of "Employer" Under Section 3(5) of ERISA—Association
   Health Plans, 83 Fed. Reg. 28912 (June 21, 2018) ............................. vi, vii, 6, 9

Fed. R. App. P. 26.1 ...............................................................................vi

Fed. R. App. P. 29(a)(4)(E) ....................................................................vi

Adam Liptak, *Trump v. California: The Biggest Legal Clashes*, N.Y.
   Times, April 5, 2018 ...........................................................................2

Andrew Pollack, *Milestone In Research In Stem Cells*, N.Y. Times, Jan.
   23, 2009 ...............................................................................................1

*Bush-Era Offshore Drilling Plan Is Set Aside*, NBCNews.com, Feb. 10,
   2009......................................................................................................1

Ceci Connolly and R. Jeffrey Smith, *Obama Positioned to Quickly Reverse Bush Actions*, WASH. POST, Nov. 9, 2008, http://www.washingtonpost.com/wp-dyn/content/article/2008/11/08/AR2008110801856_pf.html ................................1

Huma Khan, *In First 100 Days, Obama Flips Buch Admin's Policies*, ABC News, Apr. 29, 2009, https://abcnews.go.com/Politics/Obama100days/story?id=7042171 &page=1 ...........................................................................1

John M. Broder & Peter Baker, *Obama's Order Likely to Tighten Auto Standards*, N.Y. Times, Jan. 26, 2009, at A1 ......................................................1

Mendelson, Nina A., *Agency Burrowing: Entrenching Policies and Personnel Before a New President Arrives*, 78 N.Y.U. L. Rev. 557, 564-65 (2003)....................................................................................5

Tom Goldstein, *EPA Moves to Dismiss Clean Air Act Case, Reversing Bush Administration Policies*, Scotusblog.com, Feb. 6, 2009, http://www.scotusblog.com/wp/epa-moves-to-dismiss-clean-air-act-case-reversing-bush-administration-policies/ ...............................................1

## Interest of Amici Curiae

Amici are the States of Texas, Nebraska, Georgia, and Louisiana.[1] The States have an interest in the health insurance market and in the health care options available to their citizens. *See Mead v. Holder*, 766 F.Supp.2d 16, 43 (D.D.C. 2011). The Department of Labor's rule regarding Association Health Plans (AHPs) thus implicates those interests by expanding health insurance options for workers.

As noted by the Department, AHPs work to reduce the cost of health care coverage for the employers who would otherwise be too small to take advantage of the "increased bargaining power vis-à-vis hospitals, doctors, and pharmacy benefit providers" on which large groups rely. Definition of "Employer" Under Section 3(5) of ERISA—Association Health Plans, 83 Fed. Reg. 28912, 28912 (June 21, 2018). By broadening the definition of a qualifying employer, more small businesses can take advantage of that purchasing leverage. Thus "a substantial number of uninsured people will enroll in AHPs because the Department expects the coverage will be more affordable than what would otherwise be available to them." *Id.*

"Nearly all large employers offer health coverage to their employees"—due, at least in part, to lower costs stemming from the bargaining power of large groups—but only one-third of small employers do so. *See id.* at 28940. The expansion of which

---

[1] Amici states file under this Court's rule allowing state governments to do so without motion or consent. LCvR7(o). As governmental entities, amici need not file a disclosure statement. Fed. R. App. P. 26.1. No party or party's counsel authored any part of this brief. No person or entity, other than amici or its counsel, has made a monetary contribution to the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

employers may use the leverage of AHPs will thus lead to an increase in the number of employees provided health coverage by private monies. This will benefit States, such as amici, who might otherwise be left to pick up the slack with uninsured individuals. Moreover, larger groups also distribute risk across greater numbers of people. This prevents anomalous events—such as a significant serious illness—from dragging an entire plan down, thus causing small employee groups to lose their coverage through increased rates and further burden limited state funds.

At the same time, the Rule "broadens the flexibility of states to tailor their laws and regulations to their local market conditions and policy preferences." *Id.* at 28939. States are free—as they have been—to regulate the health plans at issue under ERISA section 514. *Id.* at 28953, 28959. As the Department has conceded, "the Final Rule does not preempt any . . . state laws." DOL Br. at 3. And so without relinquishing the ability to protect their citizens, states will have more covered individuals at a lower cost to the states. The win-win is created by the increased market flexibility the AHPs provide that will help states in ensuring their citizens receive proper and adequate health care.

## Introduction and Summary of the Argument

On the day President Obama took office, his administration set out to overturn at least 200 Bush-era administrative actions and executive orders.[2] From stem-cell research to offshore drilling policies to EPA decisions, the President sought to reverse course on several highly visible initiatives.[3] And President Obama's new policies and interpretations have been largely upheld by the courts. *See, e.g.*, *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015); *EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1609 (2014); *Sherley v. Sebelius*, 689 F.3d 776, 778 (D.C. Cir. 2012).

The new administration brought another round of policy changes. And, predictably, those changes have been challenged in court, with the State of California alone filing dozens of lawsuits attacking agency action on the Internet, immigration, health care, environmental actions, the census, a border wall, sanctuary cities, and voting

---

[2] Ceci Connolly and R. Jeffrey Smith, *Obama Positioned to Quickly Reverse Bush Actions*, Wash. Post, Nov. 9, 2008, http://www.washingtonpost.com/wp-dyn/content/article/2008/11/08/AR2008110801856_pf.html.

[3] Huma Khan, *In First 100 Days, Obama Flips Buch Admin's Policies*, ABC News, Apr. 29, 2009, https://abcnews.go.com/Politics/Obama100days/story?id=7042171&page=1; Andrew Pollack, *Milestone In Research In Stem Cells*, N.Y. Times, Jan. 23, 2009, at B1; *Bush-Era Offshore Drilling Plan Is Set Aside*, NBCNews.com, Feb. 10, 2009, http://www.nbcnews.com/id/29119940; John M. Broder & Peter Baker, *Obama's Order Likely to Tighten Auto Standards*, N.Y. Times, Jan. 26, 2009, at A1; Tom Goldstein, *EPA Moves to Dismiss Clean Air Act Case, Reversing Bush Administration Policies*, Scotusblog.com, Feb. 6, 2009, http://www.scotusblog.com/wp/epa-moves-to-dismiss-clean-air-act-case-reversing-bush-administration-policies/.

rights.[4] Yet just as the new policy courses charted under the Obama presidency were upheld under the accommodating standards of the APA, the current batch of law-suits claiming that President Trump's policies are arbitrary and capricious (or in need of additional procedural red tape) are subject only to the same level of review.

So long as an agency acts within its realm of authority, its decision to alter a pol-icy decision—or even reverse course—is not subject to a special, enhanced standard of review. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009); *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1036-37 (D.C. Cir. 2012) (describing the argument that agency reversal is subject to more searching review as "largely foreclosed" by *FCC v. Fox Television Stations*). This flows from the APA's narrow scope of review that limits the judicial inquiry. *Fox Television Stations, Inc.*, 556 U.S. at 513. Critically, courts are not to impose substantive judgments on the contested issue and may only review those policy shifts narrowly for fidelity to APA proce-dures—even when reliance interests are at issue. *Mortgage Bankers Ass'n*, 135 S. Ct.at 1207 ("Beyond the APA's minimum requirements, courts lack authority 'to impose upon [an] agency its own notion of which procedures are "best" or most likely to further some vague, undefined public good.'" (quoting *Vermont Yankee Nuclear Power Corp. v. Nat. Resources Def. Council, Inc.*, 435 U.S. 519, 549 (1978))).

The plaintiffs now before the Court overlook that core principle. They ask the Court to hold the DOL's decision to a higher standard than the APA contemplates.

---

[4] Adam Liptak, *Trump v. California: The Biggest Legal Clashes*, N.Y. Times, April 5, 2018, https://www.nytimes.com/2018/04/05/us/politics/trump-california-law-suits.html.

But plaintiffs misunderstand the law. Properly applying *Fox Television*, the Department's decision to expand a regulatory definition used by a previous administration merits no special scrutiny.

The plaintiffs' challenge to the Final Rule must fail.

**ARGUMENT**

## I. Agencies Need Not Jump Through Extra Procedural Hoops In Order To Alter Policy Determinations.

A federal agency is not obligated to engage additional processes when reversing course from a previous administration or expanding the scope of a previously-considered definition. Decisionmakers can reconsider the same data and come to a different conclusion resulting in another interpretation and decision. *Fox Television Stations, Inc.*, 556 U.S. at 519 (rejecting view that agency could not regulate more broadly in absence of new evidence: "As explained above, the fact that an agency had a prior stance does not alone prevent it from changing its view or create a higher hurdle for doing so."); *Nat'l Ass'n of Home Builders*, 682 F.3d at 1037. All that is required of the agency is proper procedural implementation of the new position and a reasoned explanation for its decision. *See Fox Television Stations, Inc.*, 556 U.S. at 514 (recognizing that neither the APA nor Supreme Court precedent calls for a heightened standard to review agency change).

As the Supreme Court admonished in *Perez v. Mortgage Bankers Association*, courts have no authority to impose procedural requirements beyond those stated in the APA. 135 S. Ct. at 1207 (abrogating *Paralyzed Veterans* doctrine insofar as it re-

quired additional notice and comment process by agency for changing its interpretation of a regulation). The Court rejected the notion that procedural fairness prevents an agency from "unilaterally and unexpectedly" adopting a different interpretation of a regulation the agency is charged with implementing. *Id.* at 1209. Specifically, while an agency cannot simply ignore when the new policy "rests upon factual findings that contradict those which underlay its prior policy," it need only provide a reasoned explanation and justify the change. *Id.* The APA sets the maximum procedural obligations for which agencies must adhere; reviewing courts are not permitted to impose additional requirements. *Id.* at 1207.

Fundamentally, an agency's change in policy must only satisfy the standard it would be held to in the first instance under the APA. *Fox Television Stations*, 556 U.S. at 515. Stated differently, "[t]his means that the agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id.* The Supreme Court has repeatedly held that heightened review is not called for under the plain language of the APA. "We find no basis in the Administrative Procedure Act or in our opinions for a requirement that all agency change be subjected to more searching review. The Act mentions no such heightened standard." *Id.* at 514; *see also Inv. Co. Inst. v. U.S. Commodity Futures Trading Comm'n*, 891 F. Supp. 2d 162, 187 (D.D.C. 2012), as amended (Jan. 2, 2013), *aff'd sub nom*, *Inv. Co. Inst. v. Commodity Futures Trading Comm'n*, 720 F.3d 370 (D.C. Cir. 2013). Precedent does not impose such a requirement either. *See Fox Television Stations*, 556 U.S. at 514 ("And our opinion in *State Farm* neither held nor implied that every

agency action representing a policy change must be justified by reasons more substantial than those required to adopt a policy in the first instance.").

Importantly, an incoming administration's actions should be emblematic of the system working properly, not a point of failure. Even among scholars, the legitimacy of agency action to finalize regulations in opposition to the incoming administration's announced preferences is questionable and illustrates a disregard for the expressed will of the national electorate. *See* Mendelson, Nina A., *Agency Burrowing: Entrenching Policies and Personnel Before a New President Arrives*, 78 N.Y.U. L. Rev. 557, 564-65 (2003) (recognizing the undemocratic and potentially illegitimate efforts of agencies to finalize agency action in light of the administration change illustrating a disregard for public's choice in president).

This is not to say an agency should act beyond the scope of its statutorily defined authority or that such actions can never be reviewed. If an agency's policy was "not in accordance with the law" in the first place, it is owed no deference. Courts, however, are not permitted to broadly apply heightened standards of review to pass on an agency's policy decisions. The scope of review is narrow and, in reviewing agency action, a court is prohibited from substituting its judgment for that of the agency. *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016); *Fox Television Stations*, 556 U.S. at 514. Ultimately, an agency's change in policy must be sustained when it

passes muster under the same standard it would have been held to in the first instance under the APA. *Fox Television Stations*, 556 U.S. at 514.[5]

## II. The DOL's Decision Satisfies APA Review.

Under the appropriately narrow scope of review, the agency's action in this case is within both the scope of the APA and the guidelines set forth by the Supreme Court for changing course. Here, the Department engaged in reasoned decision making by interpreting ERISA's definition of "employer" to allow more companies to band together in order to sponsor a multiple-employer "employee welfare benefit plan." *See* 83 Fed. Reg. at 28913-14. The interpretive expansion allows small businesses to participate more easily in the AHP process and take advantage of the group buying power that large employers naturally use. It was of note to the Department that many "small business owners currently do not offer health coverage to their employees" with "ever-increasing costs [being] the primary reason they cannot offer affordable health coverage to their employees and their families." *Id.* at 28914-15. Once the cost barrier is removed from the equation, it is more likely that small business owners will be able to provide health coverage to their employees. *Id.* at 28912, 28940.

The Department's definitional expansion is consistent with the Supreme Court's determination in *FCC v. Fox Televisions Stations* that the Commission's decision to depart from prior practice and implement a new enforcement policy to find

---

[5] Indeed, such agency reversals can be accomplished as an exercise of the same authority the first action was taken. Similarly, if the agency lacked the authority to act in the first instance then undoing that agency action cannot be impermissible.

even so-called "fleeting expletives" actionably indecent was neither arbitrary nor capricious. 556 U.S. at 517. The Commission acknowledged that its course of action represented a shift in policy. *Id.* In deciding to expand the scope of its enforcement activity, the FCC examined and expressly disavowed inconsistent past practice and dicta supporting the "prior Commission and staff action." *Id.* The Court analyzed the Commission's reasoning to find it entirely rational. *Id.* Thus, the Second Circuit's reversal of the Commission's orders was erroneous. *Id.* at 518-21. There was no basis in the APA or Supreme Court precedent authorizing a more probing review to undermine the agency's decision making. *Id.* at 513-15. Accordingly, undoing or reversing agency action is permissible so long as the agency demonstrates awareness of the change and offers a satisfactory reason for it. *Id.*; *see also Electric Power Supply Ass'n*, 136 S. Ct. at 782 (confirming that reviewing court is tasked only with ensuring agency engaged in review of relevant data and provided reasoning for the action taken).

All this explains why many legal challenges arising from the transition from the Bush to Obama-led executive failed. Courts upheld the new policy directives against challenges that these policy decisions were arbitrary and capricious departures from prior policy. *See EME Homer City Generation*, 134 S. Ct. at 1609 (upholding EPA Transport Rule); *U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 382 (D.C. Cir. 2017) (per curiam) (refusing rehearing en banc of panel decision upholding the FCC's 2015 Open Internet Order); *Coalition for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102 (D.C. Cir. 2012) (per curiam) (rejecting challenges to EPA Endangerment Finding and Tailpipe Rule); *Sherley,* 689 F.3d 776 (regarding policy reversal in embryonic

stem-cell research directives of NIH); *Nat. Resources Defense Council v. EPA,* 571 F.3d 1245 (D.C. Cir. 2009) (per curiam) (upholding Reasonably Available Technology Certification provision of Clean Air Act while invalidating elimination of attainment demonstration requirement and New Source Review exemptions); *Envtl. Integrity Project v. U.S. EPA,* 610 F. App'x 409 (5th Cir. 2015) (per curiam) (upholding EPA final rule regarding State Implementation Plans to meet NAAQS); *BCCA Appeal Group v. U.S. EPA,* 476 F. App'x 579 (5th Cir. 2012) (per curiam) (declining review of EPA rejection of Texas's Qualified Facilities Program); *Real Alternatives, Inc. v. HHS,* 867 F.3d 338 (3d Cir. 2017) (upholding ACA contraceptive mandate).

As noted previously, in addition to the challenge here, certain states and public interest groups have mounted numerous legal challenges to the policy shifts directed by the Trump administration. *See, e.g.*, *Regents of Univ. of Calif. v. DHS*, 279 F. Supp. 3d 1011, 1026-27 (N.D. Cal. 2018) (DACA); *Trs. of Princeton Univ. v. United States*, No. 1:17-cv-2325-CRC (D.D.C. filed Nov. 3, 2017) (same); *New York v. Trump*, No. 1:17-cv-5228-NGG-JO (E.D.N.Y. filed Sept. 6, 2017) (same); *NAACP v. Trump*, No. 1:17-cv-1907-CRC (D.D.C. filed Sept. 18, 2017) (same); *Vidal v. Nielsen*, No. 1:16-cv-4756-NGG-JO (E.D.N.Y. filed Aug. 25, 2016) (same); *New York v. Pruitt*, No. 1:18-cv-1030 (S.D. N.Y. filed Feb. 6, 2018) (delaying applicability of Clean Water Rule); *Sierra Club v. Zinke*, No. 4:18-cv-00524 (N.D. Cal. filed Jan. 24, 2018) (BLM Fracking Rule); *California v. EPA*, No. 18-1114 (D.C. Cir. filed May 1, 2018) (emission standards); *Nat'l Coal. for Advanced Transp. v. EPA*, No. 18-1118 (D.C. Cir. May 3, 2018) (same); *Ctr. for Biological Diversity v. EPA*, No. 18-1139 (D.C. Cir. May 15, 2018) (same); *California v. Zinke*, No. 4:17-cv-00042 (D. Mont. filed May 9, 2017)

(coal lease program); *Hawaii v. Trump*, No. 1:17-cv-00050 (D. Haw. filed Feb. 3, 2017) (travel ban); *IRAP v. Trump*, No. 8:17-cv-00361 (D. Md. filed Feb. 7, 2017) (same); *California v. Hargan*, No. 4:17-cv-05783 (N.D. Cal. filed Oct. 6, 2017) (ACA contraception rule rollback); *Pennsylvania v. Trump*, No. 2:17-cv-04540 (E.D. Pa. filed Oct. 11, 2017) (same); *California v. Trump*, No. 3:17-cv-05895 (N.D. Cal. filed Oct 13, 2017) (ACA cost sharing); *California v. Ross*, No. 3:18-cv-01865 (N.D. Cal. filed Mar. 26, 2018) (census questionnaire); *Doe v. Trump*, No. 1:17-cv-01597 (D.D.C. filed Aug. 9, 2017) (admission of transgender troops).

And those challenges, like the ones raised in response to Obama-era policy reversals complaining that the agency's change of position is arbitrary and capricious, must fail so long as the agency has cleared the APA's minimal threshold. The decision to "broaden the types of employer groups or associations that may sponsor a single group health plan under ERISA for the benefit of the employees of the group," 83 Fed. Reg. at 28914, aligns with the multitude of cases upholding shifts in agency policy based on the party residing in the White House. Because the DOL engaged in reasoned decision making and provided an explanation for its policy shift, its Final Rule must be upheld.

## Conclusion

The Court should deny the plaintiffs' motion for summary judgment and grant either the defendants' motion to dismiss or motion for summary judgment.


Respectfully submitted.


Doug Peterson
Attorney General of Nebraska

Christopher M. Carr
Attorney General of Georgia

Jeff Landry
Attorney General of Louisiana

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

/s/ *Kyle D. Hawkins*
Kyle D. Hawkins
Solicitor General
Kyle.Hawkins@oag.texas.gov

John C. Sullivan
Assistant Solicitor General
John.Sullivan@oag.texas.gov

Office of the Texas
Attorney General
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1700

*Attorneys for Amici Curiae*

10

## CERTIFICATE OF SERVICE

On November 7, 2018, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Kyle D. Hawkins
KYLE D. HAWKINS

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(g)(1) because it contains 2,388 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kyle D. Hawkins
KYLE D. HAWKINS